OPINION OF THE COURT
 

 Simons, J.
 

 This appeal raises the question whether Trial Judges or defense counsel are under a duty to warn defendants of the possible deportation consequences before entering a guilty plea. We conclude that there is no such duty, and we therefore affirm.
 

 
 *402
 
 I
 

 On September 28, 1990, 19-year-old defendant Rudolph Ford was showing a gun to his girlfriend, Alicia Byron. Believing he had removed the bullets, defendant put the gun to her head and pulled the trigger. The gun discharged, and Byron was killed instantly. Defendant was indicted for manslaughter in the second degree (Penal Law § 125.15 [1]), criminal possession of a weapon in the second degree (Penal Law § 265.03), and criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]). With the advice of counsel, defendant pleaded guilty to manslaughter in the second degree in full satisfaction of the indictment and was sentenced to two to six years in prison. After serving the minimum sentence, he was paroled.
 

 Defendant is a documented legal alien from Jamaica and, following his release, the Immigration and Nationalization Service instituted proceedings for his deportation based upon his conviction of a crime involving moral turpitude
 
 (see,
 
 8 USC § 1251 [a] [2] [A] [i]).
 

 Consequently, defendant moved in the Supreme Court for an order changing the manslaughter judgment to a judgment convicting him of criminally negligent homicide. The court granted the motion to the extent of vacating his plea and directing a new trial. It held that "where the facts surrounding the episode to which defendant pleads would not suggest to a reasonable person that the plea involves an admission of grossly immoral activity then, in those rare cases, the defendant should be told that even though what he describes to the court does not involve moral turpitude, he may nevertheless be deported, if he pleads guilty.” (157 Misc 2d, at 671.) The Appellate Division, construing defendant’s motion as one to vacate the plea pursuant to CPL 440.10, reversed Supreme Court’s order and reinstated the judgment of conviction. It held that under the doctrine of collateral consequences the court was not obligated to warn defendant of possible deportation before accepting his plea and that the failure of counsel to advise his client of that possibility before permitting him to plead did not constitute ineffective assistance of counsel
 
 (see, People v Ford,
 
 205 AD2d 798).
 

 II
 

 A trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of
 
 *403
 
 what the plea connotes and its consequences
 
 (People v Harris,
 
 61 NY2d 9, 19;
 
 Boykin v Alabama,
 
 395 US 238, 244). The court is not required to engage in any particular litany when allocuting the defendant, but due process requires that the record must be clear that "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant”
 
 (North Carolina v Alford,
 
 400 US 25, 31, citing
 
 Boykin v Alabama,
 
 395 US 238,
 
 supra; see also, People v Moissett,
 
 76 NY2d 909, 910-911). Manifestly, a criminal court is in no position to advise on all the ramifications of a guilty plea personal to a defendant. Accordingly, the courts have drawn a distinction between consequences of which the defendant must be advised, those which are "direct”, and those of which the defendant need not be advised, "collateral consequences”
 
 (Fruchtman v Kenton,
 
 531 F2d 946, 948,
 
 cert denied
 
 429 US 895;
 
 and see, Michel v United States,
 
 507 F2d 461, 466). A direct consequence is one which has a definite, immediate and largely automatic effect on defendant’s punishment
 
 (Cuthrell v Director, Patuxent Inst.,
 
 475 F2d 1364,
 
 cert denied
 
 414 US 1005). Illustrations of collateral consequences are loss of the right to vote or travel abroad
 
 (Meaton v United States,
 
 328 F2d 379), loss of civil service employment
 
 (United States v Crowley,
 
 529 F2d 1066,
 
 cert denied
 
 425 US 995), loss of a driver’s license
 
 (Moore v Hinton,
 
 513 F2d 781), loss of the right to possess firearms (Penal Law § 400.00 [1] [b]) or an undesirable discharge from the Armed Services
 
 (Redwine v Zuckert,
 
 317 F2d 336). The failure to warn of such collateral consequences will not warrant vacating a plea because they are peculiar to the individual and generally result from the actions taken by agencies the court does not control
 
 (see, United States v Sambro,
 
 454 F2d 918, 922;
 
 Sanchez v United States,
 
 572 F2d 210, 211).
 

 Deportation is a collateral consequence of conviction because it is a result peculiar to the individual’s personal circumstances and one not within the control of the court system. Therefore, our Appellate Division and the Federal courts have consistently held that the trial court need not, before accepting a plea of guilty, advise a defendant of the possibility of deportation
 
 (see, People v Boodhoo,
 
 191 AD2d 448;
 
 People v Williams,
 
 189 AD2d 910,
 
 Iv denied
 
 81 NY2d 978;
 
 Fruchtman v Kenton, supra; Cuthrell v Director, Patuxent Inst., supra; United States v Porrino,
 
 212 F2d 919, 921,
 
 cert denied
 
 348 US 840). We adopt that rule and conclude that in
 
 *404
 
 this case the court properly allocuted defendant before taking his plea of guilty to manslaughter in the second degree.
 
 *
 

 III
 

 Nor did the failure of counsel to warn defendant of the possibility of deportation constitute ineffective assistance of counsel.
 

 The right to effective assistance of counsel is guaranteed by the Federal and State Constitutions (US Const 6th Amend; NY Const, art I, § 6). The standard for measuring the performance of counsel under the New York Constitution has been stated as follows:
 

 "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided
 
 meaningful representation,
 
 the constitutional requirement will have been met”
 
 (People v Baldi,
 
 54 NY2d 137, 147 [emphasis added]).
 

 The phrase "meaningful representation” does not mean "perfect representation”
 
 (People v Modica,
 
 64 NY2d 828, 829). In the context of a guilty plea, a defendant has been afforded meaningful representation when he or she receives an advantageous plea and nothing in the record casts doubt on the apparent effectiveness of counsel
 
 (People v Boodhoo,
 
 191 AD2d 448, 449,
 
 supra; People v Mayes,
 
 133 AD2d 905, 906).
 

 In the present case, defendant was indicted for manslaughter in the second degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. Each of these charges constitutes a felony, punishable by a maximum term of 15, 15 and 7 years respectively. Moreover, sentences upon the manslaughter conviction and the second degree possession count could have run consecutively, thereby exposing the defendant to a possible 30-year term of imprisonment (Penal Law § 70.25;
 
 and see, People v Robbins,
 
 118 AD2d 820). Defendant received meaningful representation when counsel was able to limit his conviction to manslaughter in the second degree in full satisfaction of the indictment and to limit the sentence to two to six years.
 

 
 *405
 
 Nor has defendant stated grounds for relief under the Federal Constitution. The two-part test in
 
 Strickland v Washington
 
 (466 US 668) requires a showing that counsel’s performance was deficient and that the deficiency in performance prejudiced defendant. Although the failure to advise a defendant of the possibility of deportation does not constitute ineffective assistance of counsel
 
 (see, United States v Del Rosario,
 
 902 F2d 55, 59,
 
 cert denied
 
 498 US 942;
 
 United States v Campbell,
 
 778 F2d 764, 768;
 
 United States v Gavilan,
 
 761 F2d 226, 228), some Federal courts have held that affirmative misstatements by defense counsel, may, under certain circumstances
 
 (Downs-Morgan v United States,
 
 765 F2d 1534, 1540-1541;
 
 United States v Santelises,
 
 509 F2d 703, 704;
 
 United States v Campbell,
 
 778 F2d 764, 768-769;
 
 cf., People v Ramos,
 
 63 NY2d 640). Defendant has not alleged here, however, that counsel incorrectly advised him about the risk of deportation or that counsel’s advice, if any, induced him to plead guilty.
 

 Thus, we conclude that the defendant was not denied his constitutional rights when he pleaded guilty. The court was under no obligation to inform the defendant of any possible collateral consequences of his plea, including the possibility of deportation, nor was defendant denied effective assistance of counsel.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed.
 

 *
 

 The New York Sentencing Reform Act of 1995 (L 1995, ch 3) now requires trial courts to advise defendants of the possibility of deportation. However, the failure to do so does not aifect the voluntariness of a guilty plea (NY Sentencing Reform Act of 1995 §§ 30, 74 [b]).