OPINION OF THE COURT
Joseph E. Fahey, J.
On April 12, 1995, the defendant entered a plea of guilty to attempted robbery in the first degree in violation of sections 110.00 and 160.15 of the Penal Law and burglary in the third degree in violation of section 140.20 of the Penal Law before the Honorable Patrick J. Cunningham in this court. At the *353 time he entered these guilty pleas, the court agreed to sentence him to an indeterminate term of imprisonment of three to six years and two to four years to run concurrently. Over the objection of the Assistant District Attorney, the court released the defendant in order to allow him to get married and adjourned sentencing until May 24, 1995. At the time of the plea, the court warned him pursuant to People v Parker (172 AD2d 697 [2d Dept 1991]) that he would face an enhanced sentence should he fail to appear on that date. Thereafter, the defendant did not appear and was ultimately arrested as a fugitive by the United States Marshall Service in Albuquerque, New Mexico, on April 9, 1997. He was returned to this court on May 15, 1997. The People have expressed their intention to seek enhanced sentences as a result of the defendant’s flight and failure to appear. The defendant opposes this, contending that the Court gave the defendant an inadequate warning concerning the consequences that would result, relying upon Innes v Dalsheim (864 F2d 974 [2d Cir 1988]), People v Rosa (194 AD2d 755 [2d Dept 1993]) and People v Wimple (198 AD2d 464). The People rely on People v Figgins (87 NY2d 840) and People v Rumlin (209 AD2d 1051 [4th Dept 1994]) for authority to seek a harsher sentence.
The court has reviewed the Second Circuit holding in Innes v Dalsheim (supra) and finds it neither persuasive nor controlling. In that case, the appellant was granted habeas corpus relief from an enhanced sentence imposed after he breached his plea agreement after denying him the right to withdraw his guilty plea. In holding that the denial of the motion to withdraw the guilty plea violated Innes’ right to due process, the Second Circuit relied upon Santobello v New York (404 US 257 [1971]). There, the Supreme Court held that: "[T]he adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.” (Supra, at 262.)
In applying Santobello (supra), the Second Circuit determined that although the State court had informed the defendant that a breach of the plea agreement could result in an enhanced sentence, it did not specifically inform him he could not withdraw his guilty plea and absent that express admonition, it is unclear the defendant knew he was giving up his right to *354 trial faced with the prospect of a more serious sentence being imposed. The Court determined that this lack of clarity in the warning given to the defendant required that his plea be vacated and he be afforded the opportunity to proceed to trial. While this court is somewhat skeptical of the reasoning in Innes (supra) in that it fails to impose any concomitant obligation upon the defendant to appear for sentencing or refrain from committing new crimes — minimal burdens at best — the instant plea colloquy suffers from no such lack of clarity. In agreeing to release the defendant over the District Attorney’s objection in order to allow him to get married before sentencing, Judge Cunningham warned him:
"There has to be a penalty, Kevin, if you get arrested for something, you know, some arrest while you’re out or any further trouble or if you don’t show up for sentence, then I’m going to just sentence you at that point to whatever is appropriate. And it won’t be a minimum sentence. Do you want to take that chance?
"(The Defendant). Yes sir, I’ll be here.”
Clearly, the defendant was on notice that if he breached the agreement to appear for sentencing or became involved in new criminal activity he would face an enhanced sentence and that standing trial would not be an option. As noted above, the defendant did not appear for sentencing, having fled the jurisdiction and was returned by the United States Marshall Service 25 months later.
The defendant further contends that his plea of guilty must be vacated because he suffered from mental illness at the time of his plea and had an inadequate understanding of his constitutional rights. Additionally, he claims he was the victim of ineffective assistance of counsel who allegedly provided incorrect advice concerning the sentencing risk following a guilty verdict after' trial along with failure to raise his unfitness to proceed pursuant to CPL article 730. Finally, he claims his plea was coerced during the plea allocution thereby inducing an involuntary admission from him.
In support of his claim that mental illness hampered his understanding of his constitutional rights at the time his plea was entered, the defendant relies upon a report of a mental competency examination ordered by this court on July 10, 1997, some 28 months after the plea was entered. During an interview with Dr. Marilyn Ward, who found him fit to proceed, the defendant appeared to exhibit some confusion about the role of a Grand Jury and a trial jury, but otherwise understood *355 the concept of a plea bargain, the role of his attorney, his available defenses and other parties to court proceedings. Moreover, this appears to be the first occasion in which the defendant contends his ability to understand court proceedings was impaired. This claim is belied by the plea minutes of April 12, 1995 in which the defendant expressly acknowledges his right to a trial by jury on each indictment and his renunciation of the same in exchange for the court’s sentencing commitment.
The defendant’s claim that he was the victim of ineffective assistance of counsel because he was misadvised of his potential sentencing exposure following unsuccessful trials and the failure to- raise his fitness to proceed are likewise without merit. In support of his claim that he was misadvised about his potential sentencing exposure, the defendant baldly asserts that he was told by his lawyer that he faced trial on a B felony rather than a C felony, and this misadvice is corroborated by his statement at the time of his plea: 'T would rather do the 3 to 6 than 12-1/2 to 25 Your Honor.” (Proceedings of Apr. 12, 1995, at 3.)
What is overlooked, however, is that the defendant entered pleas of guilty to two different indictments, each of which carried maximum sentences of 71/2 to 15 years and 31/2 to 7 years respectively, which could have resulted in consecutive sentences. Additionally, his plea satisfied an unindicted robbery in the second degree, which carried a maximum sentence of 71/2 to 15 years and a petit larceny charge, which carried an additional year. Thus, his maximum potential exposure was 181/2 years to 33 years if he was unsuccessful at each trial. Moreover, after initially expressing his belief that his maximum sentencing exposure was 121/2 to 25 years, the defendant, two lines later, told the court: "I would rather do the 3 to 6 than 6 to 12” (id., at 3), which was within the authorized sentencing range for attempted robbery in the second degree, the C felony, which he was in fact charged with.
In urging his plea be vacated on this ground, the defendant relies upon People v Christian (139 AD2d 896 [4th Dept 1988]) in which the defendant’s plea was vacated where he was told a sentence on a separate indictment would have to be imposed consecutively rather than concurrently if he proceeded to trial and lost.
In the instant case, no such threat explicitly or implicitly was made. The court, at most, expressed its belief that the proposed concurrent minimum sentences was an advantageous plea and that the defendant would not receive a minimum *356 sentence if he breached his agreement to appear for sentencing. Regardless of whether the defendant believed his maximum sentencing exposure was 121/2 to 25 years or some other term, there is no question he knew that in entering guilty pleas to the two indictments he would be sentenced to the minimum periods of incarceration allowable on each of the sentences and that they would run concurrently. Clearly, the defendant’s plea was motivated by this sentencing commitment. Unlike the situation presented in People v Goldfadden (145 AD2d 959 [4th Dept 1988]), the defendant was able to fully allocute his culpability with respect to each indictment nor did the court improperly or erroneously misrepresent the maximum sentencing exposure faced by the defendant previously discussed above.
The New York Court of Appeals in addressing the issue of ineffective assistance of counsel has held: "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met” (People v Baldi, 54 NY2d 137, 147).
Moreover, the Court has more recently held that: "In the context of a guilty plea, a defendant has been afforded meaningful representation when he or she receives an advantageous plea and nothing in the record casts doubt on the apparent effectiveness of counsel” (People v Ford, 86 NY2d 397, 404, citing People v Boodhoo, 191 AD2d 448, 449).
It can hardly be gainsaid that concurrent minimum sentences to satisfy two separate indictments, an unindicted C felony and an additional misdemeanor, was an advantageous plea at the time it was entered.
The defendant’s newly minted claim that his counsel was ineffective because he failed to raise his mental condition or competency to proceed is likewise unpersuasive.
There is simply nothing in the record of the proceedings before this court in 1995 to suggest that the defendant was mentally ill or was incompetent to proceed. The record of the proceedings of April 12, 1995 reveals that the defendant was lucid and responsive during colloquy with the court and his responses to the court’s questioning were appropriate suggesting a full and complete understanding of the nature and consequence of his plea, the sentence to be imposed and his obligation to reappear on the date for sentencing. Likewise, the defendant has been examined four times at his request by various *357 psychiatrists since he has been returned to this jurisdiction, and each time has been found competent to proceed. Indeed, during one court appearance before this court, the defendant on his own raised an apparent discrepancy concerning the level of the charges he was reportedly being held on in the jail and those charged in the indictments. In short, there is simply no evidence that any mental condition the defendant suffered from during 1991 and earlier years was evident during the proceedings in this court in 1995 and since his return to the jurisdiction this year. In this regard, the defendant’s reliance on People v Bryant (66 AD2d 786 [2d Dept 1978]) is misplaced.
The defendant’s final contention is that his plea colloquy with Judge Cunningham was so coercive that it produced an involuntary admission by him. In support of this claim, the defendant asserts the court’s statement that: "in the commission of the crime you or another participant, all people are equally guilty. I think Mr. Homer has pled guilty, Mr. Williams has pled guilty, you’re the lone remaining defendant, someone had a .380 caliber loaded handgun. Are you prepared to admit this to me?” (Proceedings, Apr. 12, 1995, at 5.)
The defendant contends this statement is coercive because it implies that he had no option other than to plead guilty. Although the transcript is accurately quoted, the full context of the question reveals that it was preceded by prefatory language which was designed to explore the allegation in the attempted robbery in the first degree charge which comprised the first count in one of the indictments which alleged that the defendant along with Quenzell Williams and Jeffery Homer: "acting in concert, forcibly attempted to steal property from Arthur Jones, and in the course of the crime or in the immediate flight therefrom, they or another participant in the crimes were armed with a deadly weapon, to wit: a .380 calibre loaded handgun.”
While the question may have been inartfully phrased, it was factually accurate in that his two codefendants had previously been convicted and legally correct in its premise that all defendants found to be acting in concert would be "equally guilty”. The defendant in his moving papers, while professing to deny knowledge of a weapon, concedes that one of his codefendants "brandished” a weapon which would be imputed to all if they were indeed acting in concert as charged. In this context, it is difficult to see how the colloquy between the defendant and Judge Cunningham could be viewed as coercive, especially in light of the plea bargain for minimum concurrent sentences and the defendant’s imminent release from custody.
*358 Finally, counsel for the defendant has urged that the defendant cannot be subjected to enhanced sentencing since he was not informed what the precise duration of the enhanced sentence would be, relying on People v Rosa (194 AD2d 755 [2d Dept 1993], supra) and People v Wimple (198 AD2d 464 [2d Dept 1993], supra). Neither of these cases stand for that proposition. In neither case was the defendant informed that a failure to appear nor a new arrest would be grounds for enhanced sentencing; as such, reversal was required. In the instant case the court was both clear and unequivocal in informing the defendant that new criminal conduct or failure to appear would result in an enhanced sentence. While the precise duration of the enhanced sentence was not spelled out, the court does not believe it would be either logical or reasonable to require that. To require a sentencing court at the time of a guilty plea to spell out the precise nature of a prospective enhanced sentence would serve only to needlessly give the defendant the option of weighing the risk of flight or the commission of new crime against the enhanced sentence set in stone. Indeed, such a requirement would bind the court to a set sentence regardless of the seriousness of the new crime committed, the duration of the flight or the wilfulness of either. Enhanced sentences based upon warnings no more precise than that given here have been affirmed by the Appellate Division, Fourth Department, in People v Wynn (239 AD2d 921 [4th Dept 1997]) and People v Gonzales (231 AD2d 939 [4th Dept 1996]), and the Court of Appeals has held that enhanced sentences are authorized where a defendant has failed to appear on the scheduled sentencing date (People v Figgins, 87 NY2d 840 [1995], supra). In the instant case, the defendant failed to appear on the scheduled sentencing date despite an unequivocal warning the court would impose a harsher sentence if he failed to do so. Furthermore, he fled the jurisdiction remaining at large for over two years until apprehended by the United States Marshall Service. Under these circumstances an enhanced sentence is justified.
Based upon the foregoing, the defendant’s motion is denied in all respects.