■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MILTON PERKINS, Jr., Appellant. [667 NYS2d 119] —Mikoll, J. P. Appeal from a judgment of the County Court of Tompkins County (Sherman, J.), rendered November 2, 1995, convicting defendant upon his plea of guilty of the crimes of criminal sale of a controlled substance in the third degree (three counts) and criminal possession of a controlled substance in the third degree (three counts).

The charges to which defendant pleaded guilty arose out of three separate sales of cocaine to undercover narcotics officers. On this appeal, defendant challenges the propriety of his identification by the undercover officers. He also contends that County Court erred in sentencing him as a second felony offender.

On February 16, 1995, at approximately 8:05 P.M., undercover State Police Officer James Land reported via radio to backup officers stationed nearby that he had just completed a drug purchase from a black male, whose height and clothing he described, in the vicinity of 209 South Plain Street in the City of Ithaca, Tompkins County. Upon hearing the radio transmission, the backup officers, James Herson and Douglas Martin, drove to the location on South Plain Street, arriving at 8:08 P.M., and observed defendant nearby. Herson knew defendant from prior contacts and observed him to fit the description given by Land. The backup officers then met up with Land, who further reported that the individual from whom he purchased the drugs identified himself as "Booga" or "Boog". Herson knew defendant to use the name "Boogaloo", and he told Land that he believed he knew the identity of the person who had sold the drugs. The officers drove around the neighborhood briefly in an effort to determine whether Land could see and identify the seller. Herson did not see defendant again, nor did Land see the person who had sold the drugs to him.

Land then suggested that a photo array containing the photo of the individual suspected by Herson be prepared and exhibited to him to determine whether he could make an identification. Herson obtained a quantity of photographs, including one of defendant, placed them in a folder and the officers traveled to the State Police barracks. At the barracks, Herson prepared the photo array, which contained photos of six black males with short hair and mustaches.* Conflicting testimony was adduced at the suppression hearing as to whether Herson was in the same room as Land while he assembled the array, but the testimony was unequivocal that Land did not observe the photographs prior to their inclusion in the array or the preparation of the array itself, nor did he discuss its composition or the location of defendant's photograph therein with Herson prior to his identification of defendant's photograph. Land testified that he immediately recognized defendant's photograph as that of the individual who had sold him the cocaine.

The second and third sales were allegedly made by defendant to undercover State Police Officer Mary Yurenda on February 23 and 28, 1995. On February 23, 1995 at approximately 4:30 P.M., Yurenda communicated via radio that she had just

---

* No claim of impropriety as to the composition of the array itself is made on this appeal. County Court found that the array contained six photographs of young black males, each with short hair and slight moustaches, and "relatively similar in appearance" and was not impermissibly suggestive.

purchased drugs from a light-skinned black male, wearing a dark-hooded sweatshirt and dark jeans, on South Plain Street in Ithaca. Immediately thereafter, backup Officer Martin proceeded to the location and observed defendant, whom he knew from prior contacts, wearing a dark-hooded jacket or sweatshirt and dark jeans. Within five minutes, Martin met up with Yurenda and they returned to the South Plain Street area in an effort to locate the person who had sold her the drugs. Martin did not see defendant on this return trip, nor did Yurenda see the individual from whom she had purchased the drugs.

On February 28, 1995, Martin again served as backup officer to Yurenda. On this occasion, although not witnessing the actual transaction, from his position in traffic one block away Martin observed Yurenda's undercover vehicle pulled over to the curb in the 200 block of South Plain Street, monitored a conversation between her and another person, and then observed defendant running in front of Yurenda's car across the street. From his vantage point Martin could only see that the person was wearing a hooded jacket or sweatshirt. Approximately five minutes later, he received a transmission from Yurenda indicating that she had purchased drugs from an individual wearing a black-hooded jacket, tied or cinched in the center, and purple pants. Upon hearing the transmission, Martin proceeded to the 200 block of South Plain Street and observed defendant again, this time noticing that he was wearing purple pants and a dark-hooded jacket tied in the center. Five minutes later, he met up with Yurenda and they returned to South Plain Street, whereupon Yurenda stated that she spotted the person who had just sold her the drugs, adding that she knew him as "Boogaloo". Looking where Yurenda was indicating, Martin again observed defendant, wearing the same clothing as before.

Defendant was not arrested the night of February 28, 1995 after his identification by Yurenda. Following his indictment on all three sales, defendant was arrested and subsequently moved to suppress the identifications made by Land and Yurenda, arguing that they resulted from improperly suggestive, police-arranged identification procedures. A *Wade* hearing was held and the testimony of Land, Martin and Herson was received. County Court denied the motion to suppress in a decision setting forth its findings of fact and conclusions of law.

Defendant entered pleas of guilty to all counts of the indictment, reserving his right to appeal County Court's denial of the suppression motion. The People filed a second felony of-

fender statement pursuant to CPL 400.21 (2), which defendant controverted insofar as he claimed that the prior conviction was based upon a plea of guilty entered involuntarily and obtained in violation of his constitutional right to effective assistance of counsel. A hearing on this issue was held, following which the court found that defendant failed to sustain his burden of proof as to the unconstitutionality of the conviction, and sentenced defendant as a second felony offender.

Defendant's two contentions on this appeal are that County Court erred in denying his motions to suppress identification testimony and to controvert the prior felony conviction. We find neither of these contentions to have merit and, accordingly, affirm.

The circumstances surrounding the photographic identification procedure were thoroughly developed at the *Wade* hearing. The record is devoid of any evidence of suggestive or improper police conduct associated with the photo array, and indeed defendant specifies none. He complains generally that the procedure was "tainted" without offering any factual support for this claim. Despite conflicting testimony as to their respective locations when the array was being assembled, both Herson (who compiled the array) and Land (who made the identification) testified unequivocally that Land did not observe its preparation, that they did not discuss its contents or the location of defendant's photograph therein, and that Land's immediate identification of defendant resulted from his own recognition and not from any suggestion by Herson.

Similarly, with regard to Yurenda's identification of defendant shortly after the sale on February 28, 1995, the record clearly indicates that her observation and identification of defendant was an independent process, occurring prior to, and certainly without suggestion from, the other officer's observation of defendant. Defendant's characterization of the Yurenda identification as a "show up" is, quite simply, a misapplication of the term. Defendant was not in police custody, at a police station, at or near a crime scene or otherwise, nor was the identification "arranged" by the police. The doctrine of "exigent circumstances" has no application to these facts, nor do the cases cited at length by defendant in his brief.

Defendant's challenge to the validity of his prior felony conviction is likewise without merit. Under the NY Constitution, the standard for determining an effective assistance of counsel claim in the context of a guilty plea is whether a defendant has received "an advantageous plea and nothing in the record casts doubt on the apparent effectiveness of counsel"

(*People v Ford*, 86 NY2d 397, 404). The Federal constitutional standard is violated when a defendant shows that counsel's performance was deficient and that such deficiency resulted in actual prejudice to the defendant (*Strickland v Washington*, 466 US 668). The prior felony conviction at issue here resulted from defendant's guilty plea to a reduced felony charge, whereupon he was immediately released from custody and thereafter sentenced to probation. A hearing was held upon defendant's CPL 400.21 motion, and County Court considered and rejected the various claimed failures of counsel. The record amply supports this determination.

Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is affirmed.