OPINION OF THE COURT
Carol Berkman, J.
The defendant, charged with robbery in the second degree and driving while intoxicated, was convicted, by his plea of guilty, of attempted robbery in the second degree and operating a motor vehicle under the influence of alcohol as a felony and sentenced as a predicate felon on March 19, 1999, to a determinate sentence of three years for the attempted robbery, and a term of one year for driving under the influence, and a *624 fine of $1,000. An appeal from this conviction is pending. On October 29, 2001, defendant filed a motion to vacate his conviction on the grounds that he had not been advised of the mandatory postrelease supervision by the court or his defense counsel.
The defendant asserts that his conviction violated due process and his right to the effective assistance of counsel because neither counsel nor the court advised defendant that he would be subject to five years of postrelease supervision. In support of the motion, defendant’s retained trial counsel states in an affidavit that she did not advise the defendant of postrelease supervision.[1] The defendant’s affidavit states that neither his lawyer nor the court explained this supervision and asserts that had he “fully understood that I would have to serve five years of postrelease supervision after my release from prison, I would not have pleaded guilty.”
The Hearing
The court ordered a hearing to explore the factual issues raised by defendant’s claim that he was deprived of his right to effective assistance of counsel. The hearing was held on October 10, 2002. Defendant was the only witness.
He testified that he> pleaded guilty on February 1, 1999. His lawyer had been working on getting him some sort of program, but, as the defendant understood it, the court “denied” him a program because, as he was told, she “does not believe in programs.” The offer, as he was told on the date of “sentence,” was three years, which he was told was the legal minimum on the charge. (The record reflects that prior to the guilty pleas the parties had agreed on a sentence of 2[1]/2 years, which was not a legal disposition and which was accordingly rejected by the court.) Defendant claimed not only that his lawyer failed to tell him about postrelease supervision, but told him specifically that after serving the time he would be a free man, and would not have to worry about parole. Counsel’s affidavit, however, simply states that she did not advise him of postrelease supervision. She was not called to testify.
Defendant admitted that he learned about the postrelease supervision requirement within 30 days of his sentence and claimed that he immediately filed a notice of appeal, specifying explicitly in that document the grounds that he had not been *625 advised of postrelease supervision. Defendant did not offer this document at the hearing, but since he claimed there was a filed document on this pertinent issue, this court has inquired and determined that the notice of appeal in this case makes no substantive claim.[2] Defendant further testified that “the person I am now” would not have taken that plea, or that he would have had some “very strong reservations,” or that he would not have agreed to the plea had he known of the postrelease supervision requirement.
On cross-examination, defendant conceded that he was aware of the scope of sentence on the charges, and that his main concern at the time of his plea was minimizing his prison exposure. He admitted that he took the plea after his lawyer told him the promised sentence was the lowest legal sentence and was also influenced by his lawyer’s statement that she was not confident of going to trial. He later testified that the lawyer told him his chances were 50-50 on the robbery charge,[3] although he himself was not too aware of the details because he was not in the “right frame of mind” and did not ask her questions. He vacillated on the accuracy of his admission of guilt during his guilty plea, first claiming that he did not recall because of his blackouts, but ultimately admitting that he knew he had committed the crime and pleaded guilty because, knowing of his guilt, he did not want to go to trial and take his chances.
Defendant admitted that he was subject to deportation and that his X-ray technician license had been revoked as a result of this conviction. He claimed that these matters were important, but not his major motivation for this motion al *626 though he has spent most of his life in the United States. His major motivation, he claimed, was postrelease supervision: he is “free but not free.” He also admitted that had he not filed an appeal he would have been deported directly from prison and not be under postrelease supervision unless he returned to the United States.[4]
Findings of Fact and Conclusions of Law
Whether or not this court is bound by the decision, this court does not disagree with the Third Department’s holding in People v Goss (286 AD2d 180 [3d Dept 2001]), that defendants should be advised of the postrelease supervision portion of their sentence. Goss is not dispositive, however, because defendant did not move to vacate his guilty plea prior to judgment. The question before this court is whether defendant’s lawyers asserted failure to inform him of postrelease supervision (and her failure to move to vacate the plea on that basis) put her performance outside the range of competence demanded of attorneys in criminal cases and, if so, whether the defendant was prejudiced, that is, whether he would have in fact insisted on going to trial had his lawyer advised him of the postrelease supervision requirement. (See, e.g., People v Ahmetovic, 157 AD2d 489 [1st Dept 1990].) For both factual and legal reasons, the defendant’s claims must be rejected.[5]
First, merely not advising a client of the postrelease supervision requirement is not outside the reasonable range of competence as a general matter. Most defendants are more concerned with the immediate jail consequences of their conviction, and are very little interested in the contingent possibility of more incarceration upon a violation of postrelease supervision. Defendant in fact admitted that his primary concern was jail time, not supervision.
Defendant has also failed to persuade the court that supervision was a concern, much less one that he expressed to his trial counsel. Indeed, prior to defendant’s plea, he was seeking a “program,” which of course involves lengthy supervision. *627 Moreover, trial counsel was not called, and her affidavit admitted to no such misadvice, but only to an omission to advise. Her testimony as to the nature of her advice and defendant’s prepleading concerns was necessary to clarify defendant’s vague, inconsistent, and vacillating claims that the prospect of supervision would have been a deal-breaker. Moreover, at the hearing the defense did not call defendant’s initial lawyer, associated with counsel’s office, to establish that she did not fully discuss the sentencing range (including postrelease supervision) with the defendant prior to the substitution by retained counsel. Indeed, neither the papers nor defendant’s testimony addressed his interaction with this initial attorney at all. Finally, although defendant learned of the postrelease supervision requirement very shortly after his conviction, there is no credible evidence that he protested promptly, further undermining his already unpersuasive claim that he would not have pleaded guilty but for counsel’s asserted failures. (Cf., People v Hanley, 255 AD2d 837 [3d Dept 1998] [claim of coercion of plea by prison guard abuse undermined by delay in moving to vacate plea for long period after assertedly abusive guards no longer a threat].)
The record demonstrates that trial counsel actively negotiated a disposition and even tried to negotiate a disposition far more lenient than permitted by law. The fact that defendant was already on felony probation is part of the picture, and counsel apparently also successfully handled the violation of probation without additional penalty to defendant. The original record demonstrates that trial counsel’s main direction was to show that defendant needed rehabilitation and would respond positively to treatment. This strategy is consistent with defendant’s present claim that he was so deeply opposed to supervision that he would have insisted on a trial had he learned of postrelease supervision or that he in fact indicated this in anyway to his lawyer.
Leaving aside the credibility problems with defendant’s testimony, and there are many, he had a limited understanding of the legal rules which governed his case prior to conviction. For example, he said that he could not get a program because the judge did not “believe” in them, and apparently did not understand that as a predicate felon he was legally ineligible for a “program.” More important, his description of his prepleading discussions with counsel about the strength of the case against him appears to be distorted and inaccurate. Even accepting arguendo the defense position that *628 defendant has no burden to prove that he would have been acquitted had he chosen to go to trial (but see People v Guretzky, 274 AD2d 524 [2d Dept 2000]), the failure to elicit accurate evidence about the nature of counsel’s advice on this subject is fatal to defendant’s claim that he would not have pleaded guilty but for the failure to advise him of postrelease supervision.
Advice to a defendant as to postrelease supervision (whether by court or by counsel) can only be extremely general. Notwithstanding that the supervision is part of the sentence and accordingly a “direct” consequence, the details of postrelease supervision must await an evaluation of the defendant by an agency which will not see him until after conviction. How often he will report, whether he will participate in a treatment program, what restrictions will be placed upon him, are all open questions which neither counsel nor court can answer at the time of the plea.
In People v Ford (86 NY2d 397 [1995]), the Court of Appeals explicitly adopted a distinction already drawn by the decisions of many other jurisdictions: that a trial court must advise a defendant of the “direct” consequences of his plea, but has no obligation to explain “collateral” consequences:
“A direct consequence is one which has a definite, immediate and largely automatic effect on defendant’s punishment * * * The failure to warn of * * * collateral consequences will not warrant vacating a plea because they are peculiar to the individual and generally result from the actions taken by agencies the court does not control.” (86 NY2d at 403.)
While Ford is unquestionably controlling on the question of what must be included in a plea allocution, its formulaic approach can be mechanistic, and elevate form over substance. As the Court of Appeals stated in People v Nixon (21 NY2d 338, 355-356 [1967]),
“It should never be enough to undo a plea because of some omission in inquiry at the time of the plea without a showing of prejudice * * * While the essence of justice may be procedure there can be a point at which the administration of justice becomes only procedure and the essence of justice is lost.”
Many “collateral” consequences are indeed “automatic” upon conviction by virtue of a statute of this state or of the United States — for example the right to vote or hold public office, or to practice certain professions, or the mandatory deportation of *629 aliens convicted of drug crimes. On the other hand, postrelease supervision, while definitely and automatically required by statute as “part” (Penal Law § 70.45 [1]) of the sentence, does not have clearly defined statutory parameters: the conditions could range from virtually none to extremely restrictive (such as a residential drug program), and reincarceration is contingent upon a violation of these undefined conditions. Even the potential length of reincarceration depends on when in the post-release supervision the violation occurs. Accordingly, it is entirely understandable that an attorney might choose not to discuss an issue which can be explained only vaguely.[6]
Finally, Goss was a case in which the defendant, prior to sentence, moved to vacate his guilty plea on the ground that he had not been informed of postrelease supervision. The Appellate Division held, as a matter of law, that it was error to deny his motion. Recognizing that errors of this sort generally require preservation, in People v Jachimowicz (292 AD2d 688 [3d Dept 2002]), where there had been no motion to vacate the plea, the Third Department (in contrast to the Fourth Department in the later case of People v White, 296 AD2d 867 [2002]) granted relief in the interest of justice. Of course, had the error been preserved in this case, this court could not consider that branch of defendant’s motion under CPL 440.10 (2) (b). (People v Cooks, 67 NY2d 100 [1986].) This court does not have interests of justice jurisdiction in this context, and would not exercise it for defendant in any event. His testimony was unworthy of belief. He failed to call witnesses required to establish his claim that advice as to postrelease supervision would have changed his decision to plead guilty. He did not make a reasonably prompt complaint on learning that he would be subject to postrelease supervision, thus not only undermining his claim but also permitting the People’s case to age and presumably weaken.
Accordingly, defendant’s motion to vacate his conviction is in all respects denied.

. From the time of his arraignment on the felony complaint, on October 11, 1998, through his arraignment on the indictment on October 30, and until November 24, 1998, when retained counsel filed, defendant was represented by the Legal Aid Society (Lorraine Maddalo, Esq.). Ms. Maddalo did not provide an affidavit in support of this application and did not testify.

. The court file does contain a letter from the defendant, dated April 9, 1999, “requesting a court generated document (violent feloney [sic] overide [sic]).” This form letter is commonly sent by inmates as the override apparently permits participation in programs not otherwise available to persons convicted of certain violent felonies.

. No further information was supplied at the hearing with respect to the strength of the case. The complaint indicates that defendant was seen crashing the allegedly stolen livery cab into a wall more than ten blocks from where it was taken from its driver. Defendant’s claim at his plea allocution as well as during the hearing is that he was “in and out of [a] blackout” at the time of the incident, but he also admitted during the plea allocution that he got angry because the driver would not take him where he wanted to go. During the allocution, the court discussed the defense of intoxication with him, and specified that the People would have to prove at trial that the defendant used force for the purpose of taking the car and intended to keep it. The defendant thereafter stated he wanted to waive the defense and take the guilty plea.

. These proceedings have been long delayed in substantial part because of defense efforts to resolve defendant’s licensing and immigration difficulties. The defense determined to continue with the proceedings after defense counsel found that a certificate of relief from disabilities would not solve defendant’s licensing or immigration problem. During the course of these settlement discussions, defense counsel agreed that “Mr. Catu’s real problem is his immigration status [and his license].” (See minutes of May 31, 2002 at 3.)

. In reaching its conclusions, the court assumes that the defendant bears the burden of proof, by a preponderance.

. While of course this court has been following Goss since that decision, and will continue to do so, the limitations on advising defendants of this part of the sentence are an important part of the fabric of this and similar cases.