OPINION OF THE COURT
Steven M. Jaeger, J.
Defendant moves this court by his attorney, Virginia Conroy, for an order seeking to permit the defendant to enter judicial diversion without entry of a plea of guilty, as permitted as an exception pursuant to CPL 216.05 (4) (b).
The People oppose the motion by affirmation of Assistant District Attorney Teresa Aiello. Defendant’s attorney submits a reply.
On February 2, 2010 the defendant applied to this court to be assessed for judicial diversion for treatment for substance abuse dependence pursuant to CPL article 216. Prior to ordering an assessment, the defendant by his attorney requested that defendant enter the program without entry of a plea of guilty pursuant to CPL 216.05.
The defendant is charged with criminal possession of a controlled substance in the fourth degree, a C felony, and violations of Vehicle and Traffic Law § 319 (1) and § 1172 (a). Defendant is statutorily eligible for judicial diversion and otherwise qualifies for an assessment.
The defendant argues that the court should find exceptional circumstances pursuant to CPL 216.05 (4) (b) and permit the defendant to enter judicial diversion without a plea of guilty, due to severe collateral consequences defendant may suffer if he is required to enter a plea of guilty. Defendant states that should he enter a plea of guilty as required by the court, he will suffer suspension or revocation of his New York State teaching license and he will lose his right to continued employment and compensation. The defendant asserts that the loss defendant will sustain as a result of his plea rises to the standard set forth in CPL 216.05 as an exceptional circumstance.
The People oppose the motion stating that the possible consequences alleged by defendant do not rise to the standard intended by the statute. The People further assert that this court should not make a decision regarding defendant’s teaching license or employment, since the Licensing Board and/or Commissioner of the New York State Department of Education is the more appropriate authority.
*720 Law
On April 7, 2009, Governor Paterson signed into law comprehensive legislation overhauling the Rockefeller Drug Laws. Effective October 7, 2009 this law authorized judicial diversion into drug treatment of certain nonviolent felony drug offenders under CPL article 216. The mission of the Felony Drug Treatment Court pursuant to article 216 is to offer treatment as an alternative to incarceration for nonviolent felony offenders whose criminal behavior is driven by substance or alcohol abuse.
To be eligible for diversion, a defendant must be charged with class B, C, D or E felony drug offenses under Penal Law article 220 or article 221, or a specified offense under CPL 410.91 (5). The consent of the District Attorney is not required. Defendants are ineligible to participate in the program if, within the preceding 10 years, the defendant had been convicted of: (a) a violent felony offense; (b) a class A felony offense; or (c) any nonmerit time offense (i.e., manslaughter in the second degree, vehicular manslaughter in the first and second degrees, criminally negligent homicide, an offense under Penal Law article 130, any offense of incest, and any Penal Law article 263 offense). This 10-year period excludes any time the defendant spent incarcerated. A defendant also will be excluded when he has been previously adjudicated a prior violent felony offender or a persistent violent felony offender or if there are pending violent charges which include one of the disqualifying offenses above. Other factors that the court may consider in determining eligibility are whether the defendant is a threat to public safety or is unable to participate in the program due to other pending charges or violations of probation or parole.
If the defendant is eligible, and is found by the court after an independent evaluation to be suitable for diversion, the court may take a guilty plea and defer sentence while the defendant undergoes treatment. If the defendant successfully completes treatment, he or she will return to court for disposition pursuant to the agreement made at the time of the plea. The statute also authorizes the court to order diversion without first entering a plea of guilty in cases (a) where the People and the court consent to such an order without a plea of guilty or (b) based on a finding of “exceptional circumstances.” (See CPL 216.05 [4] [a], [b].) The People and court have not consented to such an order in this case.
Exceptional circumstances are defined by the statute to exist where the very act of a guilty plea “is likely to result in severe *721 collateral consequences,” regardless of the ultimate disposition of the case (CPL 216.05 [4] [b]). Courts in New York in some circumstances have considered the immigration status of a defendant resulting in deportation a “collateral consequence” to entering a plea of guilty. (See People v Ford, 86 NY2d 397, 403 [1995]; People v Patrick, 24 Misc 3d 1203[A], 2009 NY Slip Op 51242[U] [2009].)
In order for the court to grant the defendant’s motion, the court must find that, should the defendant enter a plea of guilty to the charges, “severe collateral consequences” are likely to follow. The issue is one of first impression for the courts of New York, and accordingly, there is no controlling case law on the issue. Therefore, in order to make such a determination, the court should adhere to the doctrine of stare decisis and statutory construction in order to ascertain the proper result.
This court further notes that there is no evidence of legislative intent on the current issue. Therefore, when interpreting the statute, the court must adhere to the principles of statutory construction, while giving deference to previous judicial determinations on the issues.
Courts in New York have defined a “direct” and “collateral” consequence as it pertains to entering a guilty plea and the effective assistance of counsel. A direct consequence is one which has a definite immediate and largely automatic effect on defendant’s rights or status. (People v Ford, 86 NY2d at 403, citing Cuthrell v Director, Patuxent Inst., 475 F2d 1364 [1973], cert denied 414 US 1005 [1973].)
The Ford Court also stated that a collateral consequence is “a result peculiar to the individual’s personal circumstances and one not within the control of the court system.” (People v Ford, 86 NY2d at 403.) In People v Ford, the Court provided various examples of collateral consequences which may follow from entry of a plea of guilty, such as a loss of civil service employment or an undesirable discharge from the Armed Services. (See United States v Crowley, 529 F2d 1066 [1976], cert denied 425 US 995 [1976]; Redwine v Zuckert, 317 F2d 336 [1963].) Until recently, courts had considered deportation a collateral consequence. (Padilla v Kentucky, 559 US —, 130 S Ct 1473 [2010]; People v Ford, supra.) However, the United States Supreme Court and others have recognized the drastic consequences of deportation due to its likely automatic result of deportation in drug offenses. (See Padilla v Kentucky, 559 US —, 130 S Ct 1473 [2010]; People v Patrick, 24 Misc 3d 1203[A], 2009 NY Slip Op 51242[U] [2009].)
*722 Unlike courts in New York, the Supreme Court of the United States has not distinguished between direct and collateral consequences in defining the scope of ineffective assistance of counsel. The Supreme Court stated in Padilla v Kentucky (supra) that because deportation is intimately related to the criminal process, it is uniquely difficult to classify as either a direct or collateral consequence. The Supreme Court stated the consequences of Padilla’s plea could easily be determined from reading the removal statute, and deportation was “presumptively mandatory” (559 US at —, 130 S Ct at 1483.)
This court is herein faced with the responsibility of determining if licensing and employment consequences constitute “severe collateral consequences.” It appears, at least to some courts and commentators, that CPL 216.05 (4) (b) should include deportation as a severe collateral consequence of taking guilty pleas in drug cases since the defendant is subject to mandatory deportation by virtue of a guilty plea. (See People v Patrick, 24 Misc 3d 1203[A], 2009 NY Slip Op 51242[U] [2009].) However, the statute is silent with regard to the specific issues raised herein.
In order to determine whether this defendant will be subject to “severe collateral consequences” as a result of a plea of guilty, the following factors should be considered: (1) the nexus between the entry of the guilty plea and the consequence and (2) whether the consequence is likely to be presumptively mandatory or likely automatic by operation of law. (People v Ford, 86 NY2d 397 [1995]; People v Patrick, 24 Misc 3d 1203[A], 2009 NY Slip Op 51242[U] [2009].) Once the court determines whether the consequence is presumptively mandatory, the court must consider whether the resulting consequence is more punitive or policy driven and whether the prejudice to the defendant outweighs the public policy considerations.
The defendant asserts that the entry of a guilty plea will ultimately result in termination of his employment as a teacher, loss of his license and benefits, all resulting in a “severe” collateral consequence. This court is not convinced of the severity of the effect on these interests as a likely result of defendant’s entering a plea of guilty. It is likely that entering into a plea of guilty may result in a collateral consequence to the defendant. However, the issue presented to this court is whether that collateral consequence is “severe” as the statute requires.
In determining the consequence, the court must analyze the New York State Education Law and whether the effects of the *723 plea are “presumptively mandatory.” The defendant is a teacher and therefore the Education Law applies.
Education Law § 3020-a (2) (b) states:
“The employee may be suspended pending a hearing on the charges and the final determination thereof. The suspension shall be with pay, except the employee may be suspended without pay if the employee has entered a guilty plea to or has been convicted of a felony crime concerning the criminal sale or possession of a controlled substance, a precursor of a controlled substance, or drug paraphernalia as defined in article two hundred twenty or two hundred twenty-one of the penal law” (Emphasis added.)
“Within ten days of receipt of the statement of charges, the employee shall notify the clerk or secretary of the employing board in writing whether he or she desires a hearing on the charges.” (Education Law § 3020-a [2] [c].)
The statute states that defendant “may” be suspended pending a hearing on the defendant’s charges and determination. Furthermore, an employee “may” be suspended without pay if the defendant enters a plea of guilty to a criminal sale or possession of a controlled substance.
Based on Education Law § 3020-a this court finds that defendant’s suspension is not presumptively mandatory or automatic by operation of law, but rather possible and uncertain with intervening circumstances or persons which will determine the ultimate disposition of defendant’s rights. The intervening person being the Board of Education of the Sewanhaka Central High School District and the Commissioner of the New York State Department of Education. Furthermore, this court finds that the statute is not so intimately related to the criminal process itself.
The defendant also argues that a plea of guilty would result in suspension or loss of his license, and asserts that this result should be considered a “severe” collateral consequence. Again, the defendant’s loss of his license is not automatic or presumptively mandatory. Defendant is afforded the right to a hearing by the New York State Department of Education. (Education Law § 3020-a [2] [c].)
This court finds that defendant’s arguments regarding his loss of license and employment, which are within the control of the New York State Department of Education and the local *724 Board of Education are not mandatory, but rather possibilities with a result that is uncertain. Those issues are not within the control of the court and strictly within the jurisdiction and review of the Board and the Commissioner (see Education Law § 305 [7]). Revocation of defendant’s license is not the only remedy available to the Board. The Board may suspend his license for a fixed amount of time or suspend the license until after successful treatment, limit the scope of his license, impose a monetary fine or require that the teacher pursue a course of continuing education or training. Although the Education Law provides for “higher suspension” where the teacher enters into a plea of guilty in a felony drug crime, that penalty is not presumptively mandatory. Therefore, the result is not mandatory and does not rise to the severity intended by the statute.
In considering the punitive versus public policy considerations, this court must consider the intent of the Legislature. If this court finds that the resulting consequence is predicated on policy rather than punitive circumstances, the court should find against a finding of severe collateral consequence.
It is evident that historically the Legislature has sought to protect children from drugs. Education Law § 3020-a (2) (b) enumerates two circumstances in which a person will be subject to a higher suspension, when defendant has
“entered a guilty plea to or has been convicted of a felony crime concerning the criminal sale or possession of a controlled substance, a precursor of a controlled substance, or drug paraphernalia as defined in article two hundred twenty or two hundred twenty-one of the penal law; or a felony crime involving the physical abuse of a minor or student.”
The Penal Law also provides higher penalties for individuals who sell drugs in school zones. (See Penal Law § 220.44.) It is clear to this court that the Legislature intended to protect children from the use or sale of drugs when enacting the statute. However, the Legislature, in enacting the statute, provided a mechanism to protect the constitutional rights of teachers and provided an opportunity that they be heard through the Board or Commissioner. This court finds that the Board of Education or the Department of Education is the more appropriate forum.
This court further finds to permit a teacher, entrusted with the safety of children, to enter judicial diversion without taking a plea of guilty would permit defendant to circumvent the purpose of the Education Law, which is to review each case *725 individually and entrust the Commissioner with the duties and responsibilities under Education Law §§ 305 and 3020-a.
Furthermore, this court holds that the public policy implications outweigh the punitive results to the defendant. Since the defendant’s consequences do not rise to the level of severity of exceptional circumstances required by the statute, coupled together with the public policy implications, defendant’s motion is denied in its entirety.
Accordingly, defendant’s motion is denied in its entirety.