*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-418

JULY TERM, 2016

| | | |
|---|---|---|
| Michael Francis Favreau | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Windsor Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Andrew Pallito, Commissioner, | } | DOCKET NO. 498-8-13 Wrcv |
| Department of Corrections | | |

Trial Judge: Theresa S. DiMauro

In the above-entitled cause, the Clerk will enter:

Plaintiff, an inmate committed to the custody of the Commissioner of the Department of Corrections, appeals from a trial court judgment upholding a disciplinary rule violation. Plaintiff contends that his decisions to waive a disciplinary hearing and admit the violation were involuntary because he was not informed that the violation would alter his custodial status from minimum confinement to close custody. We reverse.

The material facts are undisputed. In May 2013, plaintiff, an inmate at Southern State Correctional Facility, was charged with several disciplinary violations. Plaintiff discussed his options concerning the resolution of the charges with a prison hearing officer. The violation, assault on a hearing officer, arose from an incident in which plaintiff threw a t-shirt to an officer instead of handing it to him. The maximum sanction for the offense was thirty days in disciplinary segregation. After consulting with the hearing officer, plaintiff signed a waiver dispensing with his right to a hearing, admitting the violation, and accepting a sanction of fourteen days of segregation. He also admitted the violation on the record.

As a result of the violation, plaintiff accumulated sufficient "points" under the DOC's quantitative point-based system to alter his general custodial status, which can range from minimum, to medium, to close custody. The additional points changed plaintiff's status from minimum to close custody. Thus, following his fourteen days in disciplinary segregation, plaintiff spent approximately 90 days in close custody. It is undisputed that a prisoner in "close custody" loses or has restricted many rights and privileges that are available to a prisoner in minimum custody, although the extent of the restrictions is not quite as great as for a prisoner in disciplinary segregation. Both are "segregation" as defined in 28 V.S.A. § 701a as "a form of separation from the general population which may or may not include placement in a single occupancy cell and which is used for disciplinary, administrative, or other reasons."[1] The

---

[1] Section 701a is titled "Segregation of inmates with a serious functional impairment." Subsection (b) which contains the definition in the text is applicable "[f]or purposes of this title."

hearing officer did not discuss with plaintiff the effect of the waiver and admission on plaintiff's classification, and testified that he did not know plaintiff's point status prior to the hearing. Plaintiff was not independently aware of how the point-based system would work in response to his disciplinary violation. Plaintiff testified that he would not have waived his right to a hearing and admitted the violation if he had known that it would result in his close-custody confinement.

Plaintiff filed a complaint under V.R.C.P. 75, alleging that his admission was involuntary due to the failure to disclose that it would alter his custodial status. Following a hearing, the court issued a written ruling, rejecting the claim. Analogizing the situation to a Rule 11 plea hearing, the court concluded that the change in plaintiff's custodial status was a "collateral consequence" of the violation, and that prior disclosure was therefore not required. As the trial court noted, we have "held that only direct, not collateral, consequences must be included in the Rule 11 colloquy." State v. Pilette, 160 Vt. 509, 512 (1993) (holding that "the potential enhancement of the status or sentence of a future conviction" as a result of guilty plea is collateral consideration); see also In re Moulton, 158 Vt. 580, 583 (1992) (recognizing that availability of parole before expiration of sentence is collateral consequence).

Although we have not closely examined the distinguishing characteristics between a direct and a collateral consequence of a plea, courts generally agree that "[a] direct consequence is one which has a definite, immediate and largely automatic effect on defendant's punishment." People v. Ford, 657 N.E.2d 265, 267 (N.Y. 1995) overruled on other grounds by People v. Peque, 3 N.E.3d 617 (N.Y. 2013); accord Parry v. Rosemeyer, 64 F.3d 110, 114 (3d Cir. 1995) (observing that direct consequence "is one that has a definite, immediate and largely automatic effect on the range of the defendant's punishment" (quotation omitted)); Alanis v. State, 583 N.W.2d 573, 578 (Minn. 1998) ("[D]irect consequences are those which flow definitely, immediately, and automatically from the guilty plea."). A second common consideration is whether the consequence is imposed by the court itself or an independent agency. See State v. Mutwale, 2013 VT 61, ¶ 12, 194 Vt. 258 (noting that, "in the context of plea hearings, 'direct consequences' include only those which the court itself can impose"); accord Ford, 657 N.E.2d at 268 (failure to inform defendant of consequences resulting from plea will not warrant vacating plea where they "result from the actions taken by agencies the court does not control"); Beagen v. State, 705 A.2d 173, 175 (R.I. 1998) ("A consequence is deemed collateral, rather than direct, if its imposition is controlled by an agency which operates beyond the direct authority of the trial judge." (quotation omitted)).

Assessed in light of these standards, we conclude that plaintiff's reassignment of classification status and placement in close custody was a sufficiently definite, immediate, and automatic result of his plea to the disciplinary violation to constitute a direct consequence, and that the failure to inform him of this consequence rendered the plea involuntary. Although the parties here expend considerable effort debating the similarities and distinctions between disciplinary segregation and close custody, there is no dispute that plaintiff's reassignment to close custody for 90 days flowed automatically and immediately from his plea, was mandated by the same agency that imposed the disciplinary segregation, and plainly affected the conditions under which he was incarcerated. He agreed to receive 14 days of segregation as a result of his admission but instead received 104 days. In these circumstances, we conclude that disclosure prior to plaintiff's admission was required. Although the State makes much of the fact that the hearing officer here did not "have the information" regarding plaintiff's points at the time of the

Thus, it is applicable to plaintiff although there is no evidence that he has a serious functional impairment.

2

admission, the officer testified, in fact, only that he had "no reason to seek that information" prior to the hearing.

Accordingly, we conclude that the judgment must be reversed, and the matter remanded to afford plaintiff the opportunity to contest the violation.[2]

Reversed and remanded.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

---

[2] We note that the State has not claimed that the matter is moot because plaintiff has already completed the fourteen-day disciplinary segregation and resulting ninety-day close-custody period. We have no information to evaluate whether the disciplinary violation on plaintiff's prison record would be sufficient to satisfy the exception for "negative collateral consequences." In re P.S., 167 Vt. 63, 67 (1997).