[989 NYS2d 590]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v KENNETH LEWIS, Defendant.

Supreme Court, Bronx County, July 11, 2014

**APPEARANCES OF COUNSEL**

*Benjamin Ostrer*, Chester, for defendant.

*Robert T. Johnson, District Attorney (Ravi Kantha* of counsel), for plaintiff.

**OPINION OF THE COURT**

RICHARD LEE PRICE, J.

By motion submitted January 7, 2014, defendant moved to vacate his conviction pursuant to Criminal Procedure Law § 440.10 (1) (h) on the basis that he was denied effective assistance of counsel in violation the Sixth Amendment of the United States Constitution and article I, § 6 of the New York State Constitution. By decision dated March 19, 2014, this court denied defendant's motion. This expands that decision.

## I. Background and Procedural History

On May 11, 1985, the defendant was brought to Montefiore Hospital for an illness. Upon arriving, the defendant informed both a nurse and a hospital security guard that he had a gun in his bag. The defendant was arrested and charged with possessing a loaded and defaced firearm. On May 23, 1985, the grand jury returned a true bill charging defendant by way of indictment with two counts of criminal possession of a weapon in the third degree (Penal Law § 265.02 [3], [4]).

On January 21, 1986, judgment was entered against the defendant in Supreme Court, Bronx County (Goldfluss, J.), convicting him upon his plea of guilty on December 31, 1985, to one count of criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]), a violent felony offense, and sentencing him as a prior felony offender* to an indeterminate term of four years' imprisonment with a mandatory minimum period of two years' incarceration. No direct appeal was taken.

On October 30, 1990, judgment was entered against the defendant in Supreme Court, Bronx County (Fisch, J.), convicting him upon his plea of guilty to burglary in the second degree, a violent felony offense, and sentencing him as a prior violent felony offender to an indeterminate term of eight years' imprisonment with a mandatory minimum period of four years' incarceration.

On July 27, 2000, judgment was entered against the defendant in Supreme Court, Bronx County (Cirigliano, J.), convicting

---

* Defendant was sentenced as a prior felony offender on the basis of his two previous felony convictions. Both of those judgments of conviction were for attempted robbery in the third degree, and were entered on April 19, 1974, and November 16, 1976, respectively. He was sentenced to a maximum term of four years' imprisonment on each.

him upon his plea of guilty to burglary in the second degree. Based on the two previous violent felony convictions, the defendant was designated a mandatory persistent violent felony offender, and sentenced to a term of life imprisonment with a mandatory minimum period of 21 years' incarceration.

As noted, by motion submitted January 7, 2014, defendant moved to vacate his 1986 judgment of conviction pursuant to CPL 440.10 (1) (h), claiming both that his guilty plea was involuntary, and that defense counsel rendered ineffective assistance of counsel. Specifically, defendant alleges defense counsel failed to advise him that he was pleading guilty to a violent felony offense, and that it would subject him to an enhanced term of imprisonment upon a subsequent violent felony conviction. Defendant claims it was precisely such alleged failure that precluded him from understanding the potential consequences of his plea, thus rendering it involuntary. Finally, defendant asserts that had counsel advised him that he was entering a guilty plea to a violent felony offense as well as the future implications of doing so, he would have elected to proceed with trial.

The People, in opposition to defendant's motion, argue that it should be summarily denied because he failed to satisfy his burden of sufficiently corroborating the factual allegations. Moreover, given the strength of the evidence against him, it is irrational to believe he would have risked exposing himself to a lengthy prison term if convicted after trial. Finally, the People argue that since future sentence enhancements are of a collateral nature, they do not render a guilty plea invalid.

In opposing defendant's motion, the People argue that defendant failed to satisfy his burden of proving ineffective assistance of counsel because the defendant failed to establish prejudice and is not entitled to CPL 440.10 relief for consequences of a conviction that are collateral in nature such as future sentence enhancement. The People further argue that it is irrational for defendant to now claim that he would have proceeded to trial given the strength of the evidence against him, and exposure to a lengthy term of imprisonment associated with a violent felony conviction.

## II. Defendant's Burden to Allege Issues of Fact

Criminal Procedure Law § 440.30 (4) provides in relevant part:

> "Upon considering the merits of [a CPL 440.10] motion, the court may deny it without conducting a hearing if . . .

"(b) The motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts, as required by subdivision one; or . . .

"(d) an allegation of fact essential to support the motion (i) is contradicted by a court record or other official document, or is made solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all the other circumstances attending to the case, there is no reasonable possibility that such allegation is true."

A judgment of conviction is presumed valid, and a defendant moving to vacate his conviction bears the "burden of coming forward with allegations sufficient to create an issue of fact" (*People v Session*, 34 NY2d 254, 255-256 [1974]). Because the defense failed to provide an affidavit from Mr. Jaffe stating the defendant was not advised about pleading guilty to a violent felony, the People assert the ineffective assistance of counsel claim is unsubstantiated. The People further argue that the lack of an affidavit supports their contention that the defendant has failed to sufficiently corroborate his claim. Statutorily, the People are correct. Failure to provide an affidavit from counsel warrants summary denial of defendant's motion because absent any other evidence that defense counsel failed to inform him of potential increased future sentencing consequences, he is unable to "substantiate all the essential facts" (*see* CPL 440.30 [4] [b]; *see People v Morales*, 58 NY2d 1008 [1983], citing *People v Scott*, 10 NY2d 380 [1961] [failure to supply attorney's affirmation warranted summary denial of motion collaterally attacking conviction based on attorney's alleged conduct]).

The absence of an attorney's affidavit, however, by itself, is not dispositive (*see Morales*, 58 NY2d 1008 [1983]). In fact, an affidavit of counsel is not required where the defendant raises an ineffective assistance claim based on alleged error or omission of trial counsel (*People v Radcliffe*, 298 AD2d 533 [2d Dept 2002]). "The defendant's application is adverse and hostile to his trial attorney. To require the defendant to secure an affidavit, or explain his failure to do so, is wasteful and unnecessary" (*Radcliffe* at 534).

■ Here, the defendant neither provided an affidavit from his attorney, Howard Jaffe, nor explained his efforts to obtain one. Indeed, Mr. Jaffe is the only person from whom evidence

substantiating defendant's claim can be adduced. Accordingly, being that there is "no reasonable possibility that [the] allegation is true," defendant's motion must be summarily denied (CPL 440.30 [4] [d] [ii]).

### III. Knowingly, Intelligently, and Voluntarily Plea

Almost three decades after conviction, the defendant asserts his guilty plea to criminal possession of a weapon in the third degree is invalid because it was not entered into knowingly, intelligently, or voluntarily. This assertion is based on the claim that the defendant believed he was pleading guilty to Penal Law § 265.02 (3), a nonviolent felony offense, instead of section 265.02 (4), a violent felony offense (affirmation of defendant's counsel at 1). The problem with this claim is that it is just that: an unsupported conclusory assertion. His wholly unambiguous allocution clearly reflects that he admitted to every fact necessary to establish each element of criminal possession of a weapon in the third degree. In short, the defendant admitted to possessing a loaded firearm, factually and legally. His claim to the contrary, then, lacks even so much as a shred of credibility.

Indeed, defendant's only support for this claim is a ministerial transposition error in a subsequently created document. Whether the defendant believed the crime to which he was allocating was subdivision (3) or (4) is of no consequence. Defendant, in his own words, expressed that he had a loaded gun inside a bag. Even a cursory glance at the statutory language of former Penal Law § 265.02 (4) clearly states,

> "A person is guilty of criminal possession of a weapon in the third degree when: . . .
>
> "(4) He possesses any loaded firearm. Such possession shall not, except as provided in subdivision one, constitute a violation of this section if such possession takes place in such person's home or place of business."

Notwithstanding that subdivision (4) is not explicitly mentioned during the allocution, the record clearly reflects the defendant was certain about having possessed a loaded firearm.

> "THE COURT: The District Attorney tells me on May 11, 1985, you had a loaded gun in your possession. Is that true?
>
> "DEFENDANT: Yes.
>
> "THE COURT: Would you tell me in your own words that you had the gun in your possession?"

(Discussion off the record between Mr. Jaffe and the defendant.)

> "DEFENDANT: I had the gun inside a bag.
>
> "THE COURT: Was it loaded?
>
> "DEFENDANT: Yes, it was.
>
> "THE COURT: Do you have any questions of your own attorney, the District Attorney, or myself before you finally take this plea?
>
> "DEFENDANT: No.
>
> "MR. HOROWITZ: At the time the gun was recovered, there was ammunition that was not in the gun, but it was on the defendant's person.
>
> "THE COURT: All right. Plea is accepted. Take the pedigree.
>
> "THE CLERK: Are you Kenneth Lewis?
>
> "DEFENDANT: Yes.
>
> "THE CLERK: Do you withdraw your previously entered not guilty plea and do you now plead guilty to Criminal Possession of a gun in the Third Degree, under Indictment Number 2418/85?
>
> "DEFENDANT: Yes" (record at 4-5).

Defendant further contends that the gun he admitted to possessing was "not loaded" (*see* affirmation in support of motion at 1, ¶ 2). He is wrong. Such claim is predicated on the false assumption that "loaded" means live rounds in the chamber; it does not. Penal Law § 265.00 (15) defines a "loaded firearm" as "any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm." This definition is the same now as it was in 1985 (*see* People's mem of law in support of affirmation in opposition at 5 n 5). Consequently, the defendant possessed a "loaded gun" because pursuant to the Penal Law he also possessed ammunition for it, and specifically admitted as much in his own words. To be clear, Mr. Horowitz, the Assistant District Attorney, confirmed that in fact the ammunition for the defendant's firearm was not in the gun's chamber but rather on his person. The legal definition considers this a "loaded gun" (*see* Penal Law § 265.00 [15]). Defendant's claim is therefore legally meritless.

With regard to defendant's ostensibly bogus claim that he believed the subdivision to which he allocuted was (3) not (4), this court would need to suspend all sense of both logic and

rationality to accept it. Former Penal Law § 265.02 (3) provides that

> "[a] person is guilty of criminal possession of a weapon in the third degree when . . .
>
> "(3) He knowingly has in his possession a machine-gun or firearm which has been defaced for the purpose of concealment or prevention of the detection of a crime or misrepresenting the identity of such machine-gun or firearm."

Not one word of defendant's allocution remotely refers or infers that what he possessed was a defaced firearm. The defendant may indeed have been mistaken as to the specific subdivision number to which he was pleading, but he was certainly not mistaken that he possessed a loaded gun.

For the same reasoning, defendant's contention that his judgment of conviction is invalid because the certificate of disposition indicated he entered a guilty plea to subdivision (3) also fails. A certificate of disposition is but a ministerial record created subsequent to the judgment of conviction it purportedly records. Thus, regardless of the subdivision identified in the certificate of disposition, the record of defendant's allocution controls. As noted, defendant admitted to possessing a loaded, not defaced, gun. The fact that the certificate of disposition indicates otherwise is merely a transposition error. It is neither authoritative nor dispositive, and in no way does it undermine or negate the allocution.

█ Accordingly, there is no doubt the defendant knew he was pleading guilty to criminal possession of a weapon in the third degree. His allocution precisely and thoroughly elicited that he knowingly, intelligently, and voluntarily admitted to possessing a loaded gun. It is understandable that the defendant is quite unhappy with having been designated a persistent violent felon, and subjected to a lengthy enhanced term of imprisonment in part because of this conviction. It may even be reasonable for him, decades later, to seek a vacatur of it. It is entirely unreasonable, however, to ask that this court have a suspended disbelief in granting it.

## IV. Ineffective Assistance of Counsel

Defendant's ineffective assistance of counsel claim is entirely without merit. Under the Sixth Amendment of the United States Constitution, a claim of ineffective assistance of counsel is evaluated under the two-part test set forth in *Strickland v*

*Washington* (466 US 668 [1984]). To prevail, a defendant must (1) show that his counsel's performance fell below an "objective standard of reasonableness" judged by "prevailing professional norms" (the performance prong), and (2) "affirmatively prove prejudice" by demonstrating that, but for counsel's unprofessional errors, the result of the proceeding would have been different (the prejudice prong) (*Strickland*, 466 US at 687-688, 693).

To establish that counsel's performance was deficient, a defendant must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance" (*Pavel v Hollins*, 261 F3d 210, 216 [2d Cir 2001] [emphasis omitted]). This standard is "rigorous" (*Lindstadt v Keane*, 239 F3d 191, 199 [2d Cir 2001]), and "highly demanding" (*Kimmelman v Morrison*, 477 US 365, 382 [1986]). To demonstrate prejudice, a defendant must show there is a "reasonable probability" that the ineffective performance rendered the proceeding fundamentally unfair or produced an unreliable result (*Missouri v Frye*, 566 US —, —, 132 S Ct 1399, 1403 [2012]; *Lafler v Cooper*, 566 US —, 132 S Ct 1376 [2012]; *Premo v Moore*, 562 US 115, 131 S Ct 733 [2011]; *Padilla v Kentucky*, 559 US 356 [2010]; *Roe v Flores-Ortega*, 528 US 470 [2000]; *Lockhart v Fretwell*, 506 US 364 [1993]; *Hill v Lockhart*, 474 US 52 [1985]; *Strickland* at 694-695).

Success of an ineffective assistance of counsel claim under article I, § 6 of the New York State Constitution rests on whether " 'the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation' " (*People v Henry*, 95 NY2d 563, 565 [2000], quoting *People v Baldi*, 54 NY2d 137, 146-147 [1981]; *see also People v Lane*, 60 NY2d 748, 750 [1983]). Generally, trial counsel is presumed to have provided competent representation unless defendant demonstrates the absence of "strategic or other legitimate explanations" for the allegedly deficient conduct (*People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Rivera*, 71 NY2d 705, 709 [1988]). An attorney's performance "will not be considered ineffective, even if unsuccessful, as long as it reflects an objectively reasonable and legitimate trial strategy under the circumstances and evidence presented" (*People v Berroa*, 99 NY2d 134, 138 [2002]). "It is not for this court to second-guess whether a course chosen by defendant's counsel was the best trial strategy, or even a good one, so long as defendant was af-

forded meaningful representation" (*People v Satterfield*, 66 NY2d 796, 799-800 [1985]). Thus, a defendant need only establish that he did not receive meaningful representation (*Baldi*, 54 NY2d at 147; *see People v Caban*, 5 NY3d 143, 155-156 [2005]). To be clear, meaningful representation does not mean preferred or perfect representation (*Benevento*, 91 NY2d at 712; *People v Modica*, 64 NY2d 828 [1985]; *Baldi* at 146). As such, "the claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case" (*Benevento* at 714).

Consistent with this notion, it is irrelevant whether the attorney's advice had a particular impact on the outcome of the case (*Caban*, 5 NY3d at 156). Rather, New York is "ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case" (*Benevento*, 91 NY2d at 714). In New York then, the only "question is whether the attorney's conduct constituted 'egregious and prejudicial' error such that defendant did not receive a fair trial" (*Benevento* at 713). Thus, a defendant need not prove that the outcome of the case would have been different but for such errors, rather only that he was deprived of a fair trial overall (*Caban* at 155-156). Indeed, if there is an apparent contradiction, it is this: "[f]undamental fairness analysis by its nature must always encompass prejudice" such that under the New York standard the prejudice prong in *Strickland* is effectively redundant (*Rosario v Ercole*, 601 F3d 118, 125 [2d Cir 2010]). Regardless, the former, by its nature, encompasses the latter (*see Rosario*, 601 F3d 118). Ultimately,

> "[t]he intellectually disciplined dispositional path of this case must not veer from this Court's long-standing, well-settled ineffective assistance of counsel analysis and authorities . . . when reviewing a claim of ineffective assistance of counsel, care should be taken 'to avoid both confusing true ineffectiveness [of counsel] with mere losing tactics and according undue significance to retrospective analysis' " (*People v Flores*, 84 NY2d 184, 186 [1994], quoting *Baldi*, 54 NY2d at 146 [emphasis omitted]).

Notwithstanding the absence of a specific prejudice requirement, New York's "meaningful representation" in totality standard is not contrary to the *Strickland* standard (*Rosario* at 124; *Eze v Senkowski*, 321 F3d 110, 123-124 [2d Cir 2003]; *Lindstadt*, 239 F3d at 198). This is particularly true since any analy-

sis of an ineffective assistance of counsel under the New York standard inherently considers whether trial counsel engaged in "an inexplicably prejudicial course" (*People v Zaborski*, 59 NY2d 863, 865 [1983]; *Benevento* at 713). The New York Court of Appeals observed that the state constitutional standard is indeed satisfied when " 'prejudice' is examined more generally in the context of whether defendant received meaningful representation" (*Benevento* at 713).

Accordingly, because New York's concept of prejudice focuses on the quality of representation provided and not simply the "but for" causation chain, the distinction between *Baldi* and *Strickland* is that New York "refuse[s] to apply the harmless error doctrine in cases involving substantiated claims of ineffective assistance" (*Benevento* at 714). As a practical matter then, New York has " 'adopt[ed] a rule somewhat more favorable to defendants' " (*People v Ozuna*, 7 NY3d 913, 915 [2006], quoting *People v Turner*, 5 NY3d 476, 480 [2005]), "because its 'prejudice component focuses on the fairness of the process as a whole rather than its particular impact on the outcome of the case' " (*id.* at 915, quoting *Caban* at 156).

Commenting on this ostensible dichotomy, the Second Circuit noted:

> "[I]t is hard to envision a scenario where an error that meets the prejudice prong of *Strickland* would not also affect the fundamental fairness of the proceeding. The very opinion from which the troublesome phrase was drawn—*Benevento*—affirmatively stated that even a 'harmless error' could undermine the fairness of the process in such a way that violates the state's constitutional guarantee of effective assistance. . . . What case, then, could present the converse, an error so egregious that it most likely influenced the outcome of the trial, but did not cripple the fundamental fairness of the proceedings? We can think of none. Fundamental fairness analysis by its nature must always encompass prejudice" (*Rosario* at 125 [citation omitted]).

Finally, since the performance and prejudice elements set forth in *Strickland* may be addressed in either order,

> "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of suf-

ficient prejudice . . . that course should be followed" (*Strickland*, 466 US at 697).

As such, this court will address the prejudice aspect of defendant's claim before considering counsel's performance.

## A. Prejudice

### 1. Federal Standard

To succeed on an ineffective assistance of counsel motion under the federal standard, the defendant must "affirmatively prove prejudice" by establishing a "reasonable probability" that, but for such allegedly deficient conduct, the result of the proceeding would have been different (*Strickland*, 466 US at 693-694; *Lafler*, 566 US at —, 132 S Ct at 1384-1385).

Defendant faults Mr. Jaffe for neglecting to inform him that the charge to which he was pleading guilty was a violent felony offense. Assuming the defendant is correct, and there is no support other than his self-serving protestations that he is, he nevertheless failed to demonstrate a "reasonable probability" that the case would have proceeded to trial. To do so, the defendant must convince this court that going to trial under the circumstances would have been rational (*People v Santana*, 36 Misc 3d 1201[A], 2012 NY Slip Op 51144[U], *8 [Sup Ct, Bronx County 2012, Duffy, J.], citing *Padilla*, 559 US 356, and *Hill v Lockhart*, 474 US 52 [1985] [requires reasonable probability the defendant would not have pleaded guilty and would have insisted on going to trial]).

In this case, a decision to go to trial would have been anything but rational. The defendant was indicted on two counts of criminal possession of a weapon in the third degree (Penal Law § 265.02 [3], [4]). He entered a guilty plea to the more serious of those charges, possession of a loaded weapon. Had the defendant been convicted after trial, he would have been exposed to a maximum term of seven years' imprisonment. Instead, he received the substantially more favorable sentence of a maximum four-year term with a minimum period of only two years. In light of such a generous plea offer, the defendant would be hard-pressed to convince this court that he was prejudiced by Mr. Jaffe's failure to advise him that he was pleading guilty to a violent felony offense, assuming he indeed neglected to advise him of it.

Aside from defendant's unsubstantiated self-serving statements to the contrary, there is simply no support for his claim that he would have gone to trial. The fact that defendant received such a favorable plea contradicts his current assertion

that he would have instead proceeded to trial. Accordingly, the defendant has failed to show prejudice under the *Strickland* standard (*Strickland*, 466 US 668).

2. New York Standard

As indicated, New York, unlike *Strickland*, relies on the "meaningful representation" standard (*Henry*, 95 NY2d 563; *Baldi*, 54 NY2d 137). Under this standard, a defendant must establish that given the totality of the circumstances, counsel's conduct was so egregious it deprived him of a fair trial (*Benevento*, 91 NY2d 708, 713; *see also People v Hobot*, 84 NY2d 1021, 1022 [1995]; *People v Flores*, 84 NY2d 184, 188-189 [1994]). A defendant need not, however, prove that the result would have been different but for counsel's allegedly deficient conduct (*Baldi*, 54 NY2d 137; *see Caban*, 5 NY3d at 155-156). Nevertheless, "[t]he sufficiency of defendant's factual allegations as to prejudice should be evaluated with reference to the face of the pleadings, the context of the motion and defendant's access to information" (*People v McDonald*, 1 NY3d 109, 115 [2003]).

When examining a guilty plea, the "meaningful representation" standard is met when the defendant "receives an advantageous plea and nothing in the record casts doubt on the apparent effectiveness of counsel" (*People v Ford*, 86 NY2d 397, 404 [1995]). Once a defendant acquires a favorable plea bargain, "it cannot be concluded that defendant was denied effective assistance of counsel" (*People v Black*, 247 AD2d 238, 238 [1st Dept 1998], quoting *People v Garcia*, 235 AD2d 268 [1st Dept 1997]). As previously discussed, defendant did in fact receive a very favorable plea bargain, two to four years, instead of the potential seven-year sentence he could have received had he been convicted after trial.

■ Accordingly, regardless of whether analyzed under the federal or state standards, defendant cannot establish that he was in any way prejudiced by counsel's allegedly deficient conduct.

B. Performance

Having failed to demonstrate any prejudice, it is unnecessary for this court to determine whether or not counsel's performance fell below an "objective standard of reasonableness" (*Strickland*, 466 US at 687-688; *see Benevento*, 91 NY2d 708 [1998]). Nevertheless, it is worth noting that the sole support of defendant's claim is his self-serving statements nearly 15 years

post-conviction. Defendant fails to establish by a preponderance of the evidence that he was erroneously misadvised as to the nature of the crime to which he pleaded guilty (*see* CPL 440.30 [6]).

This court nevertheless concludes that counsel performed effectively. While it is true that plea counsel must advise about all direct consequences of a plea, there is no duty to advise a defendant of collateral consequences. As discussed below, whether a lawyer fails to advise a client of potential enhanced sentencing upon a future felony conviction, violent or otherwise, is a collateral consequence. Accordingly, whether Mr. Jaffe failed to advise the defendant of such future consequences is of no moment. He was under no duty to provide such advice. His performance cannot, therefore, be said to have fallen below the meaningful representation standard.

## V. Collateral Nature of the Consequences

While it is true that a trial court is not required to engage in any specific dialogue during a plea allocution, due process requires the record be clear such that "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" (*Ford*, 86 NY2d 397, 403, citing *North Carolina v Alford*, 400 US 25, 31 [1970]). The court, therefore, has a constitutional duty to ensure that a defendant, prior to pleading guilty, has a full understanding of what the plea means and its consequences (*People v Harris*, 61 NY2d 9, 19 [1983]). Because it would be both unrealistic and impractical, however, to require that a court advise a defendant of all the possible ramifications of a guilty plea, the law draws a distinction between the direct and collateral consequences of a plea (*People v Belliard*, 20 NY3d 381, 385 [2013]).

In fact, neither the court nor counsel has a duty to advise a defendant of the direct consequences that flow from a guilty plea. A direct consequence has been defined as one "which has a definite, immediate and largely automatic effect on [the] defendant's punishment" (*Ford*, 86 NY2d at 403). Some examples of direct consequences include the forfeiture of trial rights (*see Boykin v Alabama*, 395 US 238 [1969]), and the imposition of mandatory postrelease supervision (*see People v Catu*, 4 NY3d 242 [2005]). By contrast, a collateral consequence is one "peculiar to the individual's personal circumstances and one not within the control of the court system" (*Ford*, 86 NY2d at 403, *see Belliard*, 20 NY3d 381, 385). Instances of such consequences

include the loss of the right to vote or travel abroad (*Meaton v United States*, 328 F2d 379 [1964]), loss of civil service employment (*United States v Crowley*, 529 F2d 1066 [1976]), loss of a driver's license (*Moore v Hinton*, 513 F2d 781 [1975]), and sex offender registration under the Sex Offender Registration Act (*People v Gravino*, 14 NY3d 546 [2010]). Unlike direct consequences, the failure to warn of collateral consequences will not warrant vacating a plea because they are peculiar to the individual defendant and usually result from the actions taken by agencies the court does not control (*Ford*, 86 NY2d at 403, citing *United States v Sambro*, 454 F2d 918, 922 [DC Cir 1971]).

■ Here, defendant alleges that his plea was not voluntary and intelligent because he believed he was pleading guilty to a nonviolent felony. But in the defendant's case, the distinction between the violent and nonviolent felony offense lies with incarceratory exposure attached to each, now and in the future. Indeed, he complains that because of his plea to the violent felony offense of criminal possession of a weapon in the third degree under this indictment, his subsequent conviction for burglary in the second degree carried an enhanced term of imprisonment.

It is generally accepted that an enhanced sentence resulting from a subsequent conviction is a collateral consequence of a guilty plea (*People v Pierre*, 80 AD3d 441 [1st Dept 2011]; *see also People v Watkins*, 244 AD2d 269, 270 [1st Dept 1997] [holding that an attorney's failure to "explain to (the defendant) the potential future sentence-enhancement consequences of pleading guilty to a felony, (did) not implicate any constitutional right"]; *People v Outer*, 197 AD2d 543, 544 [2d Dept 1993] [holding that defendant's plea was not rendered involuntary because the court did not advise her that a consequence of her plea would be an enhanced sentence in the event she would be convicted of another crime in the future]; *People v Lancaster*, 260 AD2d 660, 661 [3d Dept 1999] [holding that "(i)t is abundantly clear that the fact that a defendant is subject to enhanced criminal treatment for an offense that he or she may commit in the future is a collateral consequence of the plea, about which a defendant need not be advised"]).

Ultimately, it is sufficient that the defendant be fully informed of the punishment for the crime he has already committed; it need not be foreseen that he will again disobey the law and commit additional crimes (*People v Jackson*, 105 Misc 2d 437 [Sup Ct, NY County 1980, Haft, J.]). Society has a right to expect

that a defendant will not commit subsequent crimes (*Jackson*, 105 Misc 2d 437, citing *People v Pray*, 50 AD2d 987 [1975]). Should he choose to, however, he has no right to be insulated from its effects by not having first been advised of the panoply of consequences.

## VI. Conclusion

For the reasons stated above, this court finds that the defendant received effective assistance of counsel as guaranteed in the Sixth Amendment of the United States Constitution and article I, § 6 of the New York State Constitution (*Strickland*, 466 US 668; *Benevento*, 91 NY2d 708; *Baldi*, 54 NY2d 137).