THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRYAN COLON, Appellant. [57 NYS3d 844]—

Appeal from a judgment of the Erie County Court (Sheila A. DiTullio, J.), rendered December 9, 2014. The judgment convicted defendant, upon his plea of guilty, of burglary in the second degree (six counts).

It is hereby ordered that the judgment so appealed from is unanimously reversed on the law, the plea is vacated, and the matter is remitted to Erie County Court for further proceedings on the indictment.

Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of six counts of burglary in the second degree (Penal Law § 140.25 [2]). The charges arose in part from home burglaries in Elma and Grand Island. The grand jury charged defendant by indictment with six counts of

burglary in the second degree. Thereafter, defendant made an omnibus motion requesting, inter alia, that County Court dismiss the indictment on the ground that the evidence presented to the grand jury was insufficient. Defendant also sought to suppress physical evidence seized upon an allegedly unlawful search and his statements to the police, which he alleged were made involuntarily. After reviewing the grand jury minutes in camera, the court issued a decision and order concluding that the evidence before the grand jury was legally sufficient and denying that part of the motion seeking dismissal of the indictment. With respect to that part of the motion seeking suppression, the court convened a *Huntley/Mapp* hearing, heard testimony from, inter alia, three Erie County Sheriff's deputies, and ultimately denied that part of the motion.

We reject defendant's contention that the court erred in refusing to suppress physical evidence and statements on the ground that the police lacked probable cause to arrest him for the Elma burglary. Contrary to defendant's contention, the court properly concluded that the deputies had probable cause for his arrest on October 3, 2012. In determining whether there was probable cause for an arrest, "the basis for such a belief must not only be reasonable, but it must appear to be at least more probable than not that a crime has taken place and that the one arrested is its perpetrator" (*People v Carrasquillo*, 54 NY2d 248, 254 [1981]; *see People v Hightower*, 39 AD3d 1247, 1248 [2007], *lv denied* 9 NY3d 845 [2007]).

The testimony of the deputies established that an eyewitness spotted a suspicious, red vehicle with a particular license plate number in the vicinity of the Elma burglary. The description of the driver of that vehicle matched defendant, and the vehicle's license plate number was traced to a relative of defendant's girlfriend, who told the deputies that she rented the vehicle for defendant's use. In addition, defendant's girlfriend told the deputies that defendant was not home at the time of the Elma burglary. When the deputies attempted to speak to defendant later that night, he fled. Shortly thereafter, they observed Eric Rivera driving a dark van away from defendant's apartment complex, with a man in the passenger seat. Within days, an eyewitness observed an identical van in the vicinity of the Grand Island burglary. That eyewitness spoke to a man near the van and positively identified the man as defendant. The telephone in the victim's home was used to place multiple calls to telephone numbers linked to defendant and to Rivera. Based on that testimony, the court properly concluded that it was

"more probable than not" that defendant had perpetrated the Elma burglary (*Carrasquillo*, 54 NY2d at 254).

Defendant further contends that the prosecutor failed in his duty to correct allegedly false testimony given by a witness. In particular, defendant contends that one of the deputies testified that he developed defendant as a suspect in the Elma burglary based on a statement made by Rivera, but that the deputy's testimony was contradicted by a police report establishing that Rivera could not have given such a statement before defendant's October 3, 2012 arrest. We reject that contention. The deputy testified that he developed defendant as a suspect in the Grand Island burglary—not the Elma burglary—based in part on Rivera's statement. Moreover, neither the deputy's testimony nor the police report indicate the date on which Rivera gave his statement, and thus defendant failed to establish that the testimony and the police report contradict each other. Although the court improperly noted Rivera's statement among the evidence that provided the police with probable cause to arrest defendant for the Elma burglary, the record does not support the allegation that the deputy gave false testimony, and thus the prosecutor had no duty to correct him (*cf. People v Colon*, 13 NY3d 343, 349 [2009], *rearg denied* 14 NY3d 750 [2010]).

Contrary to defendant's next contention, the court properly concluded that the deputies had the requisite consent to enter his apartment to arrest him on October 3, 2012. " 'Where a person with ostensible authority consents to police presence on the premises, either explicitly or tacitly, the right to be secure against warrantless arrests in private premises as expressed in *Payton v New York* (445 US 573 [1980]) is not violated' " (*People v Bunce*, 141 AD3d 536, 537 [2016], *lv denied* 28 NY3d 969 [2016]). Inasmuch as consent may be established by conduct (*see People v Huff*, 133 AD3d 1223, 1223 [2015], *lv denied* 27 NY3d 999 [2016]; *People v Sinzheimer*, 15 AD3d 732, 734 [2005], *lv denied* 5 NY3d 794 [2005]), we conclude that defendant's girlfriend's "conduct in stepping aside from the door to admit the [deputies] is enough to establish consent" (*People v Davis*, 120 AD2d 606, 607 [1986], *lv denied* 68 NY2d 769 [1986]). Moreover, defendant's girlfriend had actual authority to consent to the deputies' entry because she was residing in the apartment at the time (*see generally People v Frankline*, 87 AD3d 831, 833 [2011], *lv denied* 19 NY3d 973 [2012]).

Defendant further contends that, on September 10, 2012, the deputies exceeded the scope of their consent to enter the apartment where defendant lived with his father by proceeding past

the entryway and into defendant's bedroom. We reject that contention. During the suppression hearing, two deputies testified that they knocked on the door of the apartment and that defendant's father answered the door. When the deputies asked for defendant, his father called his name, left the door open, and led the deputies to defendant's bedroom. The deputies observed defendant's girlfriend standing in the hallway outside the open bedroom door. Through the open door, the deputies saw defendant leave the bedroom through a back door leading onto a patio. Notably, one deputy smelled an odor of marihuana as soon as he entered the apartment, and he observed marihuana in plain view in the bedroom. Rather than pursue defendant through the bedroom, the deputies turned around, left the apartment through the front door, and went outside to look for him. We thus conclude that the record establishes that defendant's father freely and voluntarily consented to the deputies' entry into the apartment, and that the deputies did not exceed the scope of that consent (see People v Swain, 109 AD3d 1090, 1091-1092 [2013], lv denied 23 NY3d 968 [2014]; People v Kelley, 220 AD2d 456, 456 [1995], lv denied 87 NY2d 922 [1996]).

Contrary to defendant's further contention, the court properly concluded that the deputies had valid consent to conduct a warrantless search of his bedroom on September 10, 2012. "It is well established that the police need not procure a warrant in order to conduct a lawful search when they have obtained the voluntary consent of a party possessing the requisite authority or control over the premises or property to be inspected" (People v Adams, 53 NY2d 1, 8 [1981], rearg denied 54 NY2d 832 [1981], cert denied 454 US 854 [1981]). The deputies' testimony established that defendant's father, who was the sole lessee of the apartment, read the form containing the consent to search the premises, indicated that he understood it, and signed it. We thus conclude that the People "met their burden of establishing that defendant's father voluntarily consented to the search of the apartment, including defendant's bedroom where the [marihuana and cell phones were] found in plain view . . . , and that he had the authority to consent to that search" (People v Adams, 244 AD2d 897, 898 [1997], lv denied 91 NY2d 887 [1998]; see also Swain, 109 AD3d at 1091-1092).

We agree with defendant, however, that the court erred in denying his motion to withdraw his plea of guilty. "A trial court is constitutionally required to ensure that a defendant, before entering a guilty plea, has a full understanding of what the

plea entails and its consequences" (*People v Belliard*, 20 NY3d 381, 385 [2013]; *see People v Streber*, 145 AD3d 1531, 1532 [2016]). It is nevertheless well established that a guilty plea is not invalid merely because the court "failed to specifically enumerate all the rights to which the defendant was entitled and to elicit from him or her a list of detailed waivers before accepting the guilty plea" (*People v Harris*, 61 NY2d 9, 16 [1983]; *see People v Tyrell*, 22 NY3d 359, 365 [2013]). Where the record establishes, however, that the court incorrectly advised the defendant of the consequences of his guilty plea, the resulting plea "must be vacated because it was not knowingly, intelligently and voluntarily entered" (*People v Jordan*, 67 AD3d 1406, 1407 [2009]).

Here, the court incorrectly advised defendant with respect to the rights that defendant was forfeiting in pleading guilty. It is well established that a defendant who pleads guilty may not challenge on appeal the sufficiency or the admissibility of the evidence before the grand jury (*see People v Hansen*, 95 NY2d 227, 233 [2000]). The record establishes, however, that defendant asked to be assured that he could raise those issues on appeal from a judgment entered upon his plea of guilty, and the court assured him that he could do so. Given those assurances, which ended up being false, defendant accepted the plea deal, and entered a guilty plea. When defendant learned that he would not be able to raise on appeal the above grand jury issues, he made a motion to withdraw his plea, which the court denied. Under the circumstances, that was error. We therefore conclude that the plea must be vacated and the matter remitted to County Court for further proceedings on the indictment. Present—Peradotto, J.P., Carni, Lindley, Troutman and Scudder, JJ.